UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA STONE,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Defendant. | Case No. EDCV 15-1300-GJS<br><br>MEMORANDUM OPINION AND ORDER |

## I.     PROCEEDINGS

On July 1, 2015, Plaintiff Aurora Sandra Stone ("Plaintiff") filed a Complaint seeking review of a decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB"). [Dkt. 1.] On November 12, 2015, the Commissioner filed an Answer to the Complaint [Dkt. 14] and lodged the Administrative Record ("AR") [Dkt. 15]. On December 11, 2015, Plaintiff filed an Opening Brief in support of her Complaint. [Dkt. 16 ("Pltf.'s Br.").] On February 8, 2016, the Commissioner filed a Memorandum in Support of her Answer. [Dkt. 19 (Def.'s Br.").] Plaintiff

did not file a reply brief. The parties have consented to proceed before the undersigned Magistrate Judge. [Dkt. 11, 12.] Thus, this matter is submitted and ready for decision.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISIONS

Plaintiff applied for DIB, alleging disability since October 7, 2010. [Dkt. 15, Administrative Record ("AR") 23.] Plaintiff's application was denied initially and on reconsideration. [AR 21.] Administrative Law Judge ("ALJ") James P. Nguyen held a hearing on January 29, 2014, and issued an unfavorable decision on February 28, 2014. [AR 21-32.]

The ALJ determined that Plaintiff suffered from the severe impairments of hypertension, hypothyroidism, hyperlipidemia, fibromyalgia, history of polycystic kidney and renal insufficiency, history of hypertensive kidney disease, chronic kidney disease, stage 3, and history of cardiac arrhythmia/heart murmur. [AR 23.] The ALJ also found, however, that none of these impairments, alone or in combination, met or equaled a listing. [AR 25-26.] The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work with the following limitations:

> [T]he claimant is limited to frequently climbing ramps and never climbing ladders, ropes, or scaffolds. In addition, the claimant is limited to frequently balancing, stooping, kneeling, crouching, crawling, and using her bilateral upper extremities for handling and fingering. Moreover, the claimant should avoid working around unprotected heights.

[AR 26.] With this RFC, based on the testimony of a Vocational Expert, the ALJ found that Plaintiff was capable of performing her past relevant work as a survey worker or security guard. [AR 31-32.] The Appeals Council denied Plaintiff's request for review. [AR 1-3.]

Plaintiff raises two claims of error here; first, that the ALJ improperly rejected the opinion of Dr. Ligons, a treating psychiatrist, and second, that the ALJ improperly found Plaintiff's subjective complaints to be less than completely credible. [Pltf.'s Br. at 1.] Plaintiff requests that the Court remand for the payment of benefits, or, in the alternative, for further proceedings. (*Id*. at 7.) The Commissioner asserts that the ALJ's weighing of the evidence was legally proper and fully supported by the record, and requests that the Court affirm the ALJ's decision. [Def.'s Br. at 2-10.] Because it makes logical sense to do so, the Court treats these issues in reverse order.

## III.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Administration's decision to determine if:  (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.  The "evidence must be more than a mere scintilla but not necessarily a preponderance." *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (internal citation omitted).

## IV.  DISCUSSION

**A.  The ALJ's Determination that Plaintiff Was Not Fully Credible is Supported by At Least One Clear and Convincing Reason.**

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering

3

specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)).  Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

"The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal citations and quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (explaining that acceptable bases for credibility determination include (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

Here the ALJ concluded that Plaintiff's credibility was "weakened" for several reasons.  First, he found that "claimant ha[d] described daily activities that are inconsistent with the claimant's allegations of disabling symptoms and limitations"; second, he noted that the claimant did not undergo the type of medical treatment "one would expect for a totally disabled individual," and that treatment

4

records showed a history of non-compliance with medication and medical advice; and, finally, that the objective findings in the medical record "failed to provide strong support for the claimant's allegations of disabling symptoms and limitations." [AR 27 and internal citations.]

### 1. Plaintiff's Description of Daily Activities

Plaintiff argues that the ALJ "overgeneralized" her testimony, because she never said she was completely incapacitated, and her reported daily activities are thus not inconsistent with her claimed limitations, *i.e.*, the highly restricted work day that her treating physician said she would be capable of performing (3-4 hours per day with breaks every half hour). (Pltf.'s Br. at 5.) But while Plaintiff did not say she was completely incapacitated, she did claim *disabling* limitations, and the ALJ's finding of inconsistency between her reported daily activities and an inability to perform even light work provides a clear and convincing reason to discount her credibility.

Plaintiff testified at the hearing about her activities of daily living and, further, there is information in the medical record where she reported activities of daily living to medical service providers. Her hearing testimony can be summarized as follows: she stated she could perform household chores and take care of her disabled son, but with some limitations. For example, she testified that she did not assist her disabled son full time, but that she was his "in home support service provider" about 70 hours a month. She also said that certain of the household chores she could perform were limited. She could do laundry and hang it up, but not fold it. She didn't vacuum. She testified that she could walk, drive and prepare meals, although at the hearing, she said she only cooked about once a week. Plaintiff also reported that she could do research on a computer.

5

Plaintiff's self-reports of her daily activities in her medical records are similar, and also do not support her claim of total disability. As one example, one consulting physician's notes report Plaintiff's level of functioning as follows:

> Her history includes adequate self-care skills of dressing, bathing, eating, toileting, and safety precautions. She does household chores, runs errands, shopping, and cooking. . . . She manages her own money. Her method of transportation is by driving a car and she can go places by herself. She is thinking of taking piano lessons, going back to school and learning a second language.

[AR 301 (history report in psychiatric evaluation of Dr. Belin).] Notably, Dr. Belin's notes contain no mention of the limitations Plaintiff put on these activities when questioned by her attorney at the hearing. Nor did the Court find, or the parties cite to, more limited descriptions of her activities in any of the other medical provider evaluations.

Even where the evidence of a claimant's daily activities "may also admit of an interpretation more favorable to" the claimant, where "the ALJ's interpretation was rational," the Court must defer to the ALJ's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). Here, the ALJ's finding that the extent of the limitations Plaintiff claimed was inconsistent with her daily activities as reported in her testimony was rational, provides a clear and convincing reason to give her testimony less weight, and is supported by substantial evidence of record.

### 2. The Objective Medical Evidence

While only one clear and convincing reason is necessary to support the ALJ's credibility finding, the Court notes that the ALJ's third reason–that the ***objective*** medical evidence does not support her allegations of disabling limitations–is also clear and convincing and supported by the evidence. While Plaintiff at times had uncontrolled blood pressure, at least one physician noted that she was "relatively asymptomatic" even though she had "not [been] compliant with medications" [AR 238], and there is no indication from any source, including her

6

treating physician, how this condition impacted her ability to sit or stand for long periods of time or complete an eight hour work day.

There are additional reports that her posture, gait, grip strength, etc., were all normal.[1] [AR 241, 242, 300-302, 306.] The Court could find no objective evidence in the medical records–evidence consisting of observations and testing, rather than opinions and conclusions–that supports she was unable to perform at the light work level as further limited by the ALJ in the RFC he constructed after his thorough review of her medical history. This is an additional reason that supports the ALJ's treatment of Plaintiff's credibility.

**B.     The ALJ Provided Specific and Legitimate Reasons for Assigning Dr. Ligons' Opinion Limited Weight.**

Plaintiff also contends that the ALJ erred by failing to articulate valid reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Ligons. Specifically at issue is Dr. Ligons' conclusion that Plaintiff could only work 3-4 hours a day with breaks every 30 minutes. For the reasons stated below, the Court affirms the decision of the Commissioner.

To reject the uncontradicted opinion of a treating physician, the ALJ must provide clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where a treating physician's opinion is contradicted by another doctor's

---

[1] In addition, Plaintiff was repeatedly not compliant with medical recommendations. [AR 238, 246, 301.] Plaintiffs described herself as a "bad patient" in one report and said "she does not believe in medications, but she prefers meditation and talking to Jesus" in another. [AR 246, 301.] She went so far as to check herself out of the hospital on one occasion against medical advice and without permitting further testing and evaluation. [AR 246.] And although she explains that she was concerned about the side effects of certain of her blood pressure medications, she was counseled that this was not an issue, and in any event, that control of her blood pressure was more important than the potential side effects. [AR 28-29; 253.]

opinion, an ALJ may reject the opinion if he provides "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31; *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citations and quotations omitted).

Plaintiff does not clearly state which standard applies here, *i.e.*, whether she contends that Dr. Ligons' opinion was contradicted by another physician's opinion or not. But it is plain from the record that Dr. Ligons' conclusions are contradicted by some of the other medical source evidence, including the findings and opinion of Dr. Alleyne.[2] Thus, the Court looks to see whether the ALJ provided specific and legitimate reasons to treat Dr. Ligons' opinion as he did.

The ALJ met his burden here with a detailed review of the medical evidence [AR 27-31], which included, in shortened form and without limitation, the following:

    i.    Claimant was diagnosed with hyperthyroidism and hyperlipidemia, but there was no indication that she took any medication for the latter. In addition, thyroid functioning tests were within normal range.

    ii.    While claimant had a history of kidney disease, at the time of the hearing she was not receiving treatment for it.

    iii.    Despite claimant's hypertension, when she was evaluated in October 2010 after reporting a racing feeling in her heart, medical testing showed normal cardiac rhythm and no abnormalities, and x-rays showed no acute disease.

---

[2] The ALJ rejected the ultimate opinion of consulting physician Dr. Alleyne, which stated that Plaintiff was capable of performing medium work, but relied on the underlying objective findings. [AR 29-31.]

8

iv. Claimant was diagnosed with fibromyalgia and takes Tramadol for pain. She was seen by medical personnel at various times from October 2010 to December 2011. However, in October 2010, there was no limitation of function and plaintiff was not in acute distress; in November 2010 and January 2011, no musculoskeletal findings were noted; and in September 2011, the claimant denied having back pain, myalgias, arthralgias, and soft tissue swelling.

v. A full physical done in March 2012 noted the claimant had difficulty performing a full squat and had a ten degree limitation of lumbar flexion, but exhibited normal gait and balance and did not require the use of an assistive device. She had no abnormal vertebral or joint deformities, and had normal range of motion in shoulders, elbows, wrists, hands, hips, knees, and ankles.

vi. Claimant had sixty pounds of force, bilaterally, for hand strength and normal muscle strength of the remaining extremities without focal motor deficits.

With respect to Dr. Ligons' opinion that Plaintiff could only work three to four hours in an eight hour day with breaks every thirty minutes (with even further limitations, such as only rarely being able to handle, finger, or reach overhead, and that she would be off task more than 25% of the time), the ALJ stated as follows:

> This opinion is given no weight as it is inconsistent with the medical records of evidence and the claimant's reported activity level. The medical records revealed although the claimant continued to report joint pain, hardly any examination [sic] were completed. Additionally, upon full examination, the, the claimant had normal muscle strength, equal grip strength, no tenderness and exhibited a normal gait (citations omitted). Furthermore, the medical records revealed that although her creatinine levels are elevated, they have been stable, she is taking no medication, and her hypertension has become moderately controlled with medication (citations omitted).

[AR 31.]

The ALJ's opinion contains specific and legitimate reasons for his rejection of Dr. Ligons' opinion, based on the ALJ's detailed summary of the record, which the Court confirms is supported by the cited evidence. Plaintiff, therefore, fails to demonstrate reversible error.

## V.  ORDER

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner of the Social Security Administration is AFFIRMED;

(2) this action is DISMISSED WITH PREJUDICE; and

(3) Judgment is entered in favor of the Commissioner.

**IT IS HEREBY ORDERED.**

DATED: May 23, 2016

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE